ANDERSON & KARRENBERG, P.C.
Heather M. Sneddon (UT #9520)
Jared D. Scott (UT #15066)
50 West Broadway, Suite 700
Salt Lake City, UT 84101-2035
Telephone:  (801) 534-1700
Facsimile:   (801) 364-7697
hsneddon@aklawfirm.com
jscott@aklawfirm.com

[Additional counsel listed on signature page]

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| BLAKE MORRIS and DENNIS ROSSETTI, Individually and on Behalf of All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>   v.<br><br>OVERSTOCK.COM, INC., PATRICK BYRNE, and JONATHAN E. JOHNSON,<br><br>    Defendants. | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Civil No. _____<br><br>Judge _____ |

Plaintiffs Blake Morris and Dennis Rossetti ("Plaintiffs"), individually and on behalf of all others similarly situated, through their undersigned counsel, for their Complaint against Defendants Overstock.com, Inc., Patrick Byrne, and Jonathan E. Johnson ("Defendants"), allege the following based upon personal knowledge, as to Plaintiffs and Plaintiffs' own acts, and upon information and belief, as to all other matters based on the investigation conducted by and through Plaintiffs' counsel, which included, among other things, a review of Overstock.com,

Inc.'s ("Overstock" or "the Company") press releases, filings with the U.S. Securities and Exchange Commission ("SEC"), analyst reports, media reports, and other publicly disclosed reports and information about the Defendants. Plaintiffs believe that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE AND SUMMARY OF THE ACTION

1.     This is a securities class action on behalf of Plaintiffs and all other persons or entities, except for Defendants, who purchased, or otherwise acquired, Overstock common stock between August 3, 2017 and March 26, 2018, inclusive (the "Class Period"). This action is brought on behalf of the Class (defined below) for violations of §§10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder by the SEC, 17 C.F.R. §240.10b-5.

2.     Overstock is an online retailer that also purports to be an "advancer of blockchain technology," such as Bitcoin. However, as recent events have revealed, Overstock's foray into "blockchain technology" has been little more than a thinly veiled strategy to take advantage of the Bitcoin frenzy.

3.     During the Class Period, Defendants represented that Overstock was well-positioned to capitalize on the "revolutionary" blockchain technology and deliver "great value to Overstock's shareholders," through, among other things, the Company's Medici Ventures ("Medici") business and its tZERO trading platform. Defendants further represented, in October 2017, that they planned to raise up to $500 million in a "coin offering," consisting of sales of

new digital coins for projects based on the blockchain technology of the digital currencies Bitcoin and Ethereum.

4. These representations drove the price of Overstock from $16.45 per share, on August 3, 2017, to a high of $86.90 per share, on January 8, 2018, an increase of more than 500% in five months. But the truth was that: (1) Overstock's coin offering was highly problematic and potentially illegal; and (2) the Company's Medici business was hemorrhaging money.

5. On March 1, 2018, when Overstock announced that the SEC had requested information about its initial coin offering, the Company's stock fell 4.4% to $57.75 from the February 28, 2018 share price of $60.40.

6. Then, on March 15, 2018, the Company stated that "the [SEC] investigation could result in a delay of the tZero security token offering, negative publicity for tZero or us, and may have a material adverse effect on us or on the current and future business ventures of tZero." Overstock also disclosed that the SEC was conducting an examination of advisers at tZERO, the Company's blockchain subsidiary. Further, it was revealed that Overstock's Medici unit had lost $22 million for 2017, despite the fact that Bitcoin prices increased by 1,375% during the same period of time. On this news, the Company's stock fell 5.1% from $48.20 to $45.70.

7. Just 10 days later, on March 26, 2018, Overstock announced that it planned to offer 4,000,000 common stock shares in an underwritten public offering. On this news, the Company's stock fell nearly 15%.

## JURISDICTION AND VENUE

8. The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§78j(b) and 78t(a)) and SEC Rule 10b-5 promulgated thereunder (17 C.F.R. §240.10b-5).

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §27 of the Exchange Act (15 U.S.C. §78aa).

10. Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b). Overstock's principal executive offices are located within this District.

11. In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the U.S. mail, interstate telephone communications, and the facilities of the national securities exchange.

## PARTIES

12. As set forth in the Certifications attached as Exhibit A hereto, Plaintiffs acquired Overstock common stock at artificially inflated prices during the Class Period and were damaged upon the revelation of the alleged corrective disclosures.

13. Defendant Overstock is incorporated in Delaware, with principal executive offices located at 799 West Coliseum Way, Midvale, UT. Overstock shares trade on the NASDAQ under the ticker symbol "OSTK."

14. Defendant Patrick Byrne ("Byrne") is Overstock's founder and Chief Executive Officer.

4

15. Defendant Jonathan E. Johnson ("Johnson") is the President of Medici and a director of the Company. During the Class Period, Defendant Johnson sold over 40,000 shares of Overstock at prices inflated by the fraud alleged herein.

16. The Defendants referenced in ¶¶14-15 above are, at times, referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

17. Overstock is an online retailer and purported advancer of blockchain technology. Through its online retail business, the Company offers a broad range of price-competitive products, including furniture, home decor, bedding and bath, housewares, and jewelry and watches, among other products. The Company sells its products and services through its Internet websites located at www.overstock.com, www.o.co, and www.o.biz.

18. In late 2014, Overstock began working on initiatives to develop and advance blockchain technology at its Medici business.

### Materially False and Misleading Statements Issued During the Class Period

19. On August 3, 2017, Overstock held an earnings call for the second quarter of 2017 ("Q2 2017"). During the Q2 2017 call, in response to an investor question, Defendant Byrne stated:

> We have seen a material change, in part because of everything in the news it spiked and then it settled back down to about $50,000 per week, and we have changed our strategy on accumulating Bitcoin. We've gone from keeping 10% of what's spent with Bitcoin to keeping 50%. In Bitcoin, we just got board approval to keep 50% of what is spent in Bitcoin or in other cryptosecurities. I mean we can keep it either in Bitcoin or in some assortment of cryptosecurities, so you'll see a portfolio emerge there. We've had some good luck with some of our -- we've been storing some coins from counterparty for a couple of years and they've grown nicely. ***Anyway, we have some nice gains in the coin department.***

5

[Emphasis added.]

20. Additionally, while discussing Symbiont, a blockchain technology company that Overstock, through Medici, invested in, Defendant Byrne advised:

> [Symbiont is] [j]ust a great firm. I know the people well, Caitlin Long from Morgan Stanley, one of the real theorists and big minds in the blockchain space is over there. And a good firm, *there's really 4 significant firms I think of in the "blockchain meets capital market" space: tZERO,* Symbiont, R3 and Digital Assets, *I think that Symbiont and tZERO have been making real honest-to-God progress at commercial products.* You'll see that Symbiont has a deal with Delaware, where they can start doing blockchain corporate registration. *I think these are the 2 firms that are getting things done in the world of "blockchain meets capital markets"* and it's nice that we're working together and we own a little stake in them.

[Emphasis added.]

21. Defendant Byrne further stated during the Q2 2017 call:

> I'll add one comment on that. On the subject of cryptocurrencies, all coins, not just Bitcoin, I think I should mention that we're days away, I think, from a significant announcement in that regard, a highly significant announcement, I think it'll probably get global attention, actually. So, it's a good question, deserved an honest answer, and the honest answer is I think we're going to do something very significant in the days ahead you'll be reading about. I mean like next week.

22. Defendant Johnson, continuing in the same vein, stated:

> Yes, I think it is a big deal. Something that the Medici development team was very excited about. *It was their idea and they're excited about participating. We think it's going to be good for cryptocurrencies, in general, and we think it's going to be great for Overstock.*

[Emphasis added.]

23. In response to a question about the value of blockchain technology for Overstock, Defendant Johnson advised:

> *First, I'll say we do think blockchain technology is revolutionary.* What the Internet did for the nearly free and nearly frictionless transfer of information, we think blockchain technology will do for nearly free and nearly frictionless transfer

6

of assets. And assets includes currency, it includes identity, it includes stocks, equity, it includes a large -- you can define assets broadly. ***We think that blockchain technology will change the world*** as much or more than Internet. ***And being at the front of it and giving a good look at the companies that are changing the world, we think it's a great value to Overstock's shareholders***. As far as divesting or raising capital into Medici, we will be looking over the next several months at raising capital. We're not looking at divesting any kind of spinoff. We'd want to do it in a way that's tax advantageous to our shareholders and that, we have not held Medici long enough to do that in such a way, but we are looking at raising money, and hope to be able to raise money in the next several quarters

[Emphasis added.]

24. On October 25, 2017, Defendants confirmed to CNBC.com that Overstock's subsidiary, tZERO, planned to raise up to "$500 million" for an "initial coin offering," which consisted of selling new digital coins for projects based on the blockchain technology of the digital currencies Bitcoin and Ethereum.

25. On December 18, 2017, Overstock announced that tZERO was engaging in a $250 million coin offering.

26. Therefore, the foregoing statements are false and misleading because they concealed and/or failed to disclose that: (1) Overstock's coin offering was highly problematic and potentially illegal; and (2) the Company's Medici business was hemorrhaging money.

**The Truth Emerges**

27. On March 1, 2018, when Overstock announced that the SEC had requested information about its initial coin offering, the Company's stock fell 4.4% to $57 per share from the February 28, 2018 share price of $60.40.

28. Then, on March 15, 2018, the Company stated that "the investigation could result in a delay of the tZero security token offering, negative publicity for tZero or us, and may have a

7

material adverse effect on us or on the current and future business ventures of tZero." Overstock also disclosed that the SEC was conducting an examination of advisers at tZERO, the Company's blockchain subsidiary. Further, it was revealed that Overstock's Medici unit had lost $22 million for 2017, despite the fact that Bitcoin prices increased by 1,375% during that time. On this news, the Company's stock fell 5.1% from $48.20 to $45.70.

29. Approximately one week later, on March 26, 2018, Overstock announced that it planned to offer 4,000,000 common stock shares in an underwritten public offering. On this news, the Company's stock fell approximately 15%.

**PLAINTIFFS' CLASS ACTION ALLEGATIONS**

30. Plaintiffs bring this action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Class consisting of all those who purchased, or otherwise acquired, Overstock common stock during the Class Period (the "Class") and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are the Defendants herein; Overstock's officers and directors, at all relevant times; members of their immediate families, and their legal representatives, heirs, successors, or assigns; and any entity in which Defendants have, or had, a controlling interest.

31. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Overstock common stock was actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiffs at this time, and can only be ascertained through appropriate discovery, Plaintiffs believe that there are thousands of members of the proposed Class. The members of the proposed Class may be identified from records maintained by Overstock, or its transfer agent, and may be notified of the

pendency of this action by mail, using customary forms of notice that are commonly used in securities class actions.

33. Plaintiffs' claims are typical of the claims of the members of the Class, as all members of the Class are similarly affected by Defendants' wrongful conduct.

33. Plaintiffs will fairly and adequately protect the interests of the members of the Class and have retained counsel that are competent and experienced in class action and securities litigation. Plaintiffs have no interest, antagonism, or conflict with the members of the Class.

34. Common questions of law and fact exist, as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

    a. whether the federal securities laws were violated by Defendants' acts as alleged herein;

    b. whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations, and management of Overstock;

    c. whether the Individual Defendants caused Overstock to issue false and misleading financial statements during the Class Period;

    d. whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

    e. whether the prices of Overstock common stock during the Class Period was artificially inflated because of Defendants' conduct complained of herein; and

      f.      whether the members of the Class have sustained damages, and if so, what is the proper measure of damages.

35. A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

36. Plaintiffs will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

      a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

      b.      the omissions and misrepresentations were material;

      c.      Overstock common stock is traded in an efficient market;

      d.      Overstock's shares were liquid and traded with moderate-to-heavy volume during the Class Period;

      e.      Overstock traded on the NASDAQ and was covered by multiple analysts;

      f.      the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of Overstock common stock; and

      g.      Plaintiffs and members of the Class purchased, acquired, and/or sold Overstock common stock between the time Defendants failed to disclose,

or misrepresented material facts, and when the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

37. Based upon the foregoing, Plaintiffs and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

38. Alternatively, Plaintiffs and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### Violations of §10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder
### (Against All Defendants)

39. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

40. This count is asserted against Defendants and is based upon §10(b) of the Exchange Act, 15 U.S.C. §78j(b), and SEC Rule 10b-5 promulgated thereunder.

41. During the Class Period, Defendants engaged in a plan, scheme, conspiracy, and course of conduct, pursuant to which they knowingly, or recklessly, engaged in acts, transactions, practices, and courses of business, which operated as fraud and deceit upon Plaintiffs and the other members of the Class; made various untrue statements of material facts, and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes, and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to and, throughout the Class Period, did: (i) deceive the investing public, including

11

Plaintiffs and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Overstock securities; and (iii) cause Plaintiffs and other members of the Class to purchase, or otherwise acquire, Overstock common stock at artificially inflated prices. In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, including the Individual Defendants, took the actions set forth herein.

42. Pursuant to the above plan, scheme, conspiracy, and course of conduct, each of the Defendants participated directly, or indirectly, in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases, and other statements and documents described above, including statements made to securities analysts and the media, that were designed to influence the market for Overstock securities. Such reports, filings, releases, and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Overstock's finances and business prospects.

43. By virtue of their positions at Overstock, the Individual Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiffs and the other members of the Class or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed, or refused to ascertain and disclose, such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully, or with reckless disregard, for the truth. In addition, each Defendant knew, or recklessly disregarded, that material facts were being misrepresented or omitted as described above.

44. Information showing that Defendants acted knowingly, or with reckless disregard, for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Overstock, the Individual Defendants had knowledge of the details of Overstock's internal affairs.

45. The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to, and did, directly or indirectly, control the content of the statements of Overstock. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Overstock's businesses, operations, future financial condition, and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases, and public statements, the market price of Overstock common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Overstock's business and financial condition, which were concealed by Defendants, Plaintiffs and the other members of the Class purchased, or otherwise acquired, Overstock common stock at artificially inflated prices and relied upon the price of the securities, the integrity of the market, and/or upon statements disseminated by Defendants and were damaged thereby.

46. During the Class Period, Overstock common stock traded on an active and efficient market. Plaintiffs and the other members of the Class, relying on the materially false and misleading statements described herein, which Defendants made, issued, or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Overstock common stock at prices artificially inflated by Defendants' wrongful conduct. Had

Plaintiffs and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired common stock at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiffs and the Class, the true value of Overstock common stock was substantially lower than the prices paid by Plaintiffs and the other members of the Class. The market price of Overstock common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiffs and Class members.

47. By reason of the conduct alleged herein, Defendants have knowingly or recklessly, directly or indirectly, violated §10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

48. As a direct and proximate result of Defendants' wrongful conduct, Plaintiffs and the other members of the Class suffered damages in connection with their respective purchases, acquisitions, and sales of Overstock common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### Violations of §20 of the Exchange Act
### (Against the Individual Defendants)

49. Plaintiffs repeat and re-allege each and every allegation contained above as if fully set forth herein.

50. During the Class Period, the Individual Defendants participated in the operation and management of Overstock and conducted and participated, directly and indirectly, in the

conduct of Overstock's business affairs. Because of their senior positions, they knew the adverse non-public information alleged herein.

51. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Overstock's financial condition and operations, and to promptly correct any public statements issued by Overstock that became materially false or misleading.

52. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases, and public filings that Overstock disseminated in the marketplace during the Class Period concerning Overstock's results of operations. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Overstock to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of Overstock within the meaning of §20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged herein that artificially inflated the market price of Overstock common stock.

53. Each of the Individual Defendants, therefore, acted as a controlling person of Overstock. By reason of their senior management positions and/or being directors of Overstock, each of the Individual Defendants had the power to direct the actions of the Company and exercised same to cause Overstock to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of Overstock and possessed the power to control the specific activities that comprise the primary violations about which Plaintiffs and the other members of the Class complain.

54. By reason of the above conduct, the Individual Defendants are liable, pursuant to §20(a) of the Exchange Act, for the violations committed by Overstock.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment against Defendants as follows:

A. Declaring that the instant action may be maintained as a class action, under Fed. R. Civ. P. 23, and certifying Plaintiffs as Class Representatives;

B. Awarding Plaintiffs and the other members of the Class compensatory damages;

C. Awarding Plaintiffs and the other members of the Class pre-judgment and post-judgment interest, as well as reasonable attorneys' fees, expert witness fees, and other costs and disbursements; and

D. Awarding Plaintiffs and the other members of the Class such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiffs hereby demand a trial by jury.

Dated: March 29, 2018  **ANDERSON & KARRENBERG, P.C.**

 */s/ Heather M. Sneddon*
Heather M. Sneddon (UT #9520)
Jared D. Scott (UT #15066)
50 West Broadway, Suite 700
Salt Lake City, UT 84101-2035
Telephone: (801) 534-1700
Facsimile: (801) 364-7697
hsneddon@aklawfirm.com
jscott@aklawfirm.com

Thomas L. Laughlin, IV
Rhiana L. Swartz
(*pro hac vice* admission to be sought)
**SCOTT+SCOTT**
**ATTORNEYS AT LAW LLP**
The Helmsley Building
230 Park Avenue, 17th Floor
New York, NY 10169
Telephone:  (212) 223-6444
Facsimile:   (212) 223-6334
tlaughlin@scott-scott.com
rswartz@scott-scott.com

Corey Holzer
Marshall Dees
Alexandria Rankin
(*pro hac vice* admission to be sought)
**HOLZER & HOLZER LLC**
1200 Ashwood Parkway
Suite 410
Atlanta, GA 30338
Telephone: (770) 392-0090
Facsimile: (770) 392-0029
cholzer@holzerlaw.com
mdees@holzerlaw.com

*Attorneys for Plaintiffs Blake Morris
and Dennis Rossetti*